**Application of Manus R. FOSTER, Clyde W. Kerns and Raymond L. Sengbush.**

**Patent Appeal No. 8432.**

United States Court of Customs and Patent Appeals.

March 18, 1971.

Richard E. Kurtz, Philadelphia, Pa., attorney of record for appellants. James H. Littlepage, Washington, D. C., Sidney A. Johnson, New York City, W. J. Scherback, Dallas, Tex., V. E. Woodcock, Philadelphia Pa., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, LANE, Judges, and DURFEE, Judge, United States Court of Claims, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–4, 7–13, 15–20, and 26–27 of appellants' application entitled "Processing of Geophysical Data."[1] No claims have been allowed.

The invention relates to processing seismograms to compensate for the effect of distortion present in obtaining the seismograms and to emphasize the characteristics of the geological formations producing the seismograms. Representations of geological formations are commonly obtained by producing a seismic impulse, for example, by exploding dynamite. The seismic energy travels through subsurface formations, is reflected from reflecting interfaces, and detected by sensitive receivers. A seismogram is produced by recording, on a magnetic tape for example, the electrical signals generated from the receiver. Appellants state that all such geophysical data include distortion, which often ob-

---

1. Serial No. 410,526 filed November 12, 1964.

scures the desired characteristics of the geological formations.

Appellants have found that the distortion present in a particular seismogram can be characterized by autocorrelating the seismogram and then smoothing the spectrum of the resultant autocorrelation function. That is, the reflectivity component of the autocorrelation function has ragged spectral variations, while the distortion component has a comparatively smooth spectrum. Therefore, spectral smoothing of the autocorrelation function suppresses the reflectivity component. The resultant output characterizes the distortion present in the seismogram. One way of smoothing the spectrum of the autocorrelation function is by truncation. Having obtained the distortion, the inverse filter coefficients are determined by prior art techniques. When the seismogram is applied to this inverse filter, the distortion is removed. Appellants disclose that their process can be carried out by a digital computer or analog apparatus.

Appellants' claims vary from method (claims 1–4, 7–13 and 15–18), to use of apparatus (claims 19–20), to apparatus (claims 26–27). Claims 4, 19, and 26 are reproduced as illustrative of each type of claim:

4. The method of processing geophysical data to compensate for the effect of distortion present in said geophysical data and to emphasize the characteristics of the geological formations producing said geophysical data comprising:

selecting a portion of said geophysical data,

correlating said portion of said geophysical data to obtain a signal having a distortion component representing said distortion and having a reflectivity component representing said characteristics of said geological formations, truncating said signal to produce spectral smoothing thereby separating said distortion component from said reflectivity component,

inverting said distortion component to produce an inverse distortion operator,

deriving from said inverse distortion operator an inverse filter, and

applying said geophysical data to said inverse filter to produce an output emphasizing said characteristics of said geological formations.

19. In the processing of geophysical data to compensate for the effect of distortion present in obtaining said geophysical data and to emphasize the characteristics of the geological formations producing said geophysical data, the new use of computing apparatus, said computing apparatus being interconnected to include:

a correlator,

a smoothing filter for smoothing the spectrum of the signal applied to the input,

an inverter producing as an output coefficients of a filter which is the inverse of the signal applied to the input, and

an inverse filter,

said new use comprising:

applying said geophysical data to said correlator to produce as an output a signal having a distortion component representing said distortion and a reflectivity component representing said characteristics of said geological formations,

applying said last-named signal to said smoothing filter to smooth the spectrum of said signal thereby separating said distortion component from said reflectivity component,

applying the output of said smoothing filter, representing said distortion component, to said inverter to produce as an output of said inverter the coefficients of a filter which is the inverse of said distortion component,

applying said coefficients to said inverse filter to provide an inverse filter having filtering which is the inverse of the distortion operator, and

applying said geophysical data to said inverse filter to produce an output emphasizing said characteristics of said geological formations.

26. Computing apparatus for processing seismograms to compensate for the effect of distortion present in obtaining said seismograms and to emphasize the characteristics of the geological formations producing said seismograms comprising:

means for converting said seismograms to electrical signals of the type which can be operated upon by said computing apparatus,

a correlator, said electrical signals being applied to said correlator to produce as an output an electrical signal having a distortion component representing said distortion and a reflectivity component representing said characteristics of said geological formations,

a smoothing filter for smoothing the spectrum of the signal applied to the input, the output of said correlator being applied to said smoothing filter to smooth said spectrum thereby producing an output representing said distortion component and suppressing said reflectivity component,

an inverter producing as an output coefficients of a filter having characteristics which are the inverse of the signal applied to the input of said inverter, the output of said smoothing filter, representing said distortion component, being applied to said inverter to produce, as an output of said inverter, filter coefficients which are the inverse of said distortion component,

an inverse filter, said filter coefficients being applied to said inverse filter so that said inverse filter has filtering characteristics which are the inverse of said distortion, and

means for applying said seismograms to said inverse filter to produce an output emphasizing said

characteristics of said geological formations.

It is noted that method claims 1–3 differ from method claim 4 in one aspect in that "electrical signals" are recited rather than "signals" alone. In addition, claims 9 and 18 recite only the method of characterizing the distortion and not the complete method of processing geophysical data, which includes the derivation of inverse filter coefficients and applying the data to the inverse filter.

While various statutory bases (35 U.S. C. §§ 100, 101, 103, and 112) have been used to reject the claims and various reasoning has been used in regard to each rejection, the central issue is whether the claims define statutory subject matter. The position of the Patent Office is that the claims include a series of mental steps which do not fall within the meaning of "process" in 35 U.S.C. § 101, read with the definition of 35 U.S.C. § 100(b) in mind. After considering the various rejections and the arguments in support of them, it appears to us that substantially all the issues presented in this appeal have recently been discussed at length by this court in In re Musgrave, 431 F.2d 882, 57 CCPA 1352 (1970); In re Mahony, 421 F.2d 742, 57 CCPA 939 (1970); In re Bernhart, 417 F.2d 1395, 57 CCPA 737 (1969); and In re Prater, 415 F.2d 1378, 56 CCPA 1360 (1968), on rehearing 415 F.2d 1393, 56 CCPA 1381 (1969). Therefore, we view our task here as merely being one of analyzing the facts of this case in view of those decisions.

■■ In regard to method claims 1–4, 7–13, and 15–18, the board was of the view that the claims "set forth only steps which transform one mental concept into another and seek to embrace that which can not be patented under 35 U.S.C. 100, 101." This rejection was also extended to new use claims 19–20. This type of rejection, and the underlying reasoning, was thoroughly discussed in *Musgrave*. There this court concluded:

All that is necessary, in our view, to make a sequence of operational steps a

statutory "process" within 35 U.S.C. § 101 is that it be in the technological arts so as to be in consonance with the Constitutional purpose to promote the progress of "useful arts." Const. Art. 1, sec. 8.

Under this analysis it is not important whether the claims contain mental steps or not if the process is within the technological arts. In the present case there can be no dispute that the process of removing distortion from seismograms is within the technological arts as was the closely related process of correcting seismic data in *Musgrave*. Therefore, we conclude that the method claims are directed to a statutory process.

■ The method claims, along with the apparatus claims, were also rejected under 35 U.S.C. § 112, second paragraph, as not "distinctly claiming that which appellants regard as their invention." The reasoning behind this rejection has two facets. In regard to the first aspect, the board stated:

> The broad claims, as here, when given the broadest reasonable interpretation thereof, are found to embrace that which can not be patented and must be denied as an overclaiming of the invention.

In light of *Musgrave*, we have concluded that the claims are directed to a statutory process and, therefore, they do not embrace that which cannot be patented. Besides, in *Mahony* this court expressed disagreement with reasoning such as that set forth in the above quotation from the board's opinion, stating:

> We first consider the rejection under 35 U.S.C. § 112. The board expressed the view * * * that where a claim reads on both statutory and nonstatutory subject matter it could not be in compliance with the second paragraph of section 112. With this view we disagree. That paragraph * * * requires that an applicant distinctly claim what *he* regards as his invention. To inject any question of statutory subject matter into that paragraph is to depart from its wording and to complicate the law unneces-

sarily. The proper consideration here is whether the appealed claims cover only what appellant regards as his invention. Appellant, through counsel, has said at several points in this case that he intends the claims to cover only the machine implementation of the process and not the mental implementation thereof. If the appealed claims accomplish that intent, not only will appellant have overcome the § 112 rejection, but he will also have overcome the § 101 rejection, since the machine-implemented process is clearly statutory.

This brings us to the second aspect of the § 112 rejection in the present case since here, as in *Mahony* and *Prater*, appellants have indicated that they intend to cover only the machine and the machine-implemented process. The board pointed out this aspect of the § 112 rejection, at least in regard to the apparatus claims, when it stated:

> To the extent that appellants have declared their intention not to claim herein a procedure that could be carried out manually but nevertheless have presented claims 26 and 27 which are so broad as to embrace a manual computation, or at most one using an electric desk calculator, these claims fail to point out that which appellants regarded as their invention as is necessary under 35 U.S.C. § 112.

Appellants contend that either or both the words "electric" and "signals" limit the method claims to machine steps and that the apparatus claims clearly read only upon apparatus which automatically performs the seismic processing.

In regard to the apparatus claims, it is clear that they cover what appellants intend them to cover, namely, a computing apparatus and not a person working with pencil and paper. Judge Baldwin in the second *Prater* opinion made it clear that means-plus-function language such as that used in the present apparatus claims does not encompass the human being as the "means" or any part thereof.

As to the method claims and the limitation to "signals," we note the meaning

attributed to the term in *Musgrave*, which involved the same technological art area, where this court stated:

> The "signals" may take the form of impressions on a magnetic tape, electrical impulses in an analog or digital computer, or visible patterns on graph paper or on an oscilloscope screen. The actual manipulation of the signals may be effected by apparatus or manually, depending on the form taken by the "signals," the proper degree of manipulation being definable mathematically.

Definitions for the word "signal" which we have found in technical dictionaries indicate that the "signals" may exist in the forms mentioned in *Musgrave*. For example, in Electronics and Nucleonics Dictionary (3rd ed., 1966) by John Markus, "signal" is defined as:

> 1. A visual, aural, or other indication used to convey information.

As evidence that the term "signals" may have different connotations, we note in Condensed Computer Encyclopedia (1969), edited by Philip B. Jordain and Michael Breslau, the term is defined as:

> An event or occurrence that transmits information from one location to another.

> Early signals were visible signs and sounds (heliograph, semaphore, whistles, etc.). Today signal is used in the technical sense for electrical or wireless transmission of information. In the near future, optical (modulated laser) signals may reappear as important communication media.

■ ■ Therefore, giving the claims the broadest interpretation reasonable, we find that those claims limited to "electrical signals" (claims 1–3) read only upon machine implementations of the process since the signals in those claims are limited to a form recognized in the art as limited to machine implementation. On the other hand, we find that the term "signals" alone (claims 4, 7–13, and 15–18) has many possible meanings and may read on visible patterns, which may be subjected to manual manipulation. Since these claims are not commensurate with appellants' own definition of what they are seeking to cover and thus go beyond that which "applicant regards as his invention," we feel that claims 4, 7–13, and 15–18 fail to comply with the second paragraph of 35 U.S.C. § 112. This is despite the fact that we have already found that the claims involve statutory subject matter.

■ Two other grounds of rejection must also be discussed. One involves the examiner's rejection of the new use claims, 19–20, as unpatentable over a general purpose digital computer under 35 U.S.C. § 103. While the board did not specifically mention this particular rejection, the solicitor's brief does, and apparently the solicitor would also extend the rejection to cover apparatus claims 26–27. This court expressed disagreement with the reasoning behind this particular rejection in both *Prater* and *Bernhart*, stating in the latter:

> To this question we say that if a machine is programmed in a certain new and unobvious way, it is physically different from the machine without that program; its memory elements are differently arranged. The fact that these physical changes are invisible to the eye should not tempt us to conclude that the machine has not been changed. If a new machine has not been invented, certainly a "new and useful improvement" of the unprogrammed machine has been * * *.

■ Finally, we note that apparatus claims 26–27 were also rejected under 35 U.S.C. § 112 on the theory that they are "so broad that they specify no apparatus but call for only certain results to be achieved by unspecified apparatus." In rejecting this reasoning, we find it necessary only to point out that paragraph 3 of § 112 authorizes means-plus-function claims, which is the form used in these claims.

For the foregoing reasons, we *reverse* the rejection of claims 1–3, 19–20, and 26–27, and we *affirm* the rejection under the second paragraph of 35 U.S.C. § 112 of claims 4, 7–13, and 15–18. The decision of the board is, therefore, *modified*.

Modified.