57 CCPA

### Application of Walter D. BERNHART and William A. Fetter.
### Patent Appeal No. 8187.

United States Court of Customs and Patent Appeals.

Nov. 20, 1969.

Christensen, Sanborn & Matthews, Seattle, Wash., attorneys of record, for appellants. Gordon R. Sanborn, Orland M. Christensen, Seattle, Wash., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, McGUIRE, Judge, sitting by designation, and ALMOND, BALDWIN and LANE, Judges.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals [1] affirming the examiner's rejection of claims 8, 13 and 18–21 in patent application serial No. 151,909, filed November 13, 1961, entitled "Planar Illustration Method and Apparatus" and disclosing a method of and apparatus for automatically making a two-dimensional portrayal of a three-dimensional object from any desired angle and distance and on any desired plane of projection.

## THE DISCLOSURE

The starting point for the method and the input for the apparatus is a set of data defining the three-dimensional positions of various points on or in the object relative to some convenient fixed point, plus information as to which of the various points should be connected by lines. The disclosure provides equations definitive of the geometric relationships between the three-dimensional coordinates of each point of interest and the corresponding two-dimensional coordinates which determine the location of that point on a planar portrayal or drawing to be made. The equations are sufficiently general to allow the resulting drawing to represent a view of the object as projected on any selected plane and as viewed from any point in space. The disclosure then teaches that the original data on point positions and connecting lines can be written in a form acceptable as input to a general purpose digital computer; that the equations disclosed in the application can be used to control the operation of the computer on the input data, i. e. the equations can be programmed into the computer; that an operator can select particular values for certain terms in the programmed equations, thereby determining the kind of portrayal to be produced; that the computer output will be a sequence of signals representative of the locations of points on the desired portrayal; and that those signals can be used to control the operation of a plotting machine which will produce the desired view of the object on paper.

Applicants concede that they did not invent the computer or the plotting machine. Nor do they claim any special method of feeding input data on point positions into the computer. Most importantly, they do not claim as their invention *merely* a set of equations even though, as we shall later see, those equations were not known in the prior art.

In order to know what the invention is we must, of course, look to the claims which point it out. We find that claims 8 and 18–21 define apparatus and claim 13 defines a method. Apparatus claims 8 and 18 are substantially the same in scope and subject matter; apparatus claims 19–21 are substantially similar. To simplify and clarify the issues here, we consider claim 18 as representative of the first group and claim 19 as representative of the second group. Method claim 13 has a lengthy and somewhat confusing preamble providing antecedents for various terms in the body of the claim. We omit most of the pre-

---

1. This was an augmented Board composed of Friedman, Kreek, Bailey and Keely, Examiners-in-Chief, and Andrews, Acting Examiner-in-Chief.

amble for clarity. The representative claims are therefore as follows:

13. A plotting method * * * comprising:

(a) a first step of programming the computer to compute the position of planar Cartesian coordinate axes in the given plane relative to the given set of object points,

(b) a second step of programming the computer to compute and produce an output defining in sequence the co-ordinates of the projection of each given point on the plane with reference to the Cartesian coordinate axes, and

(c) the step of applying the computer output to the input of a planar plotting apparatus adapted to provide on a plane a succession of straight-line segments that connect between sequential points having positions corresponding to the coordinates computed by the second step.

18. A system for providing a planar illustration of a three dimensional object as seen by an observer from a selected observation point in space comprising: signal means providing a first group of signals representing the three dimensional co-ordinates of the location of the observation point and a series of second groups of signals representing the three dimensional co-ordinates of a series of points of the object, each of said group of signals being referenced to a first-co-ordinate system; electronic digital signal processing means coupled with said signal means and programmed to provide a series of third groups of signals corresponding to the two dimensional co-ordinates of the intersection of each line of sight from the observation point to each point of the object with a selected plane in said first co-ordinate system; and planar illustration means coupled with said signal processing means and responsive to said series of third groups of signals to provide a planar illustration of the object.

19. A system for providing a drawing of an object comprising in combination: electronic digital computer means programmed to respond to applied signals $(x_e, y_e, z_e)$ and a series of groups of signals $(x_i, y_i, z_i)$ to provide a corresponding series of pairs of output signals $(v_i, w_i)$ with the relationship between signals $(x_i, y_i, z_i)$ and $x_e, y_e, z_e)$ to the signals $(v_i, w_i)$ being defined as follows:

$$v_i = \frac{k(x_e^2 + y_e^2 + z_e^2)\,(-y_e x_i + x_e y_i)}{\sqrt{(x_e^2 + y_e^2)\left[(x_e^2 + y_e^2 + z_e^2) - (x_e x_i + y_e y_i + z_e z_i)\right]}}$$

$$w_i = \frac{k\sqrt{(x_e^2 + y_e^2 + z_e^2)}\left[-x_e z_e x_i - y_e z_e y_i + z_i(x_e^2 + y_e^2)\right]}{\sqrt{(x_e^2 + y_e^2)\cdot\left[(x_e^2 + y_e^2 + z_e^2) - (x_e x_i + y_e y_i + z_e z_i)\right]}}$$

[A274]

where k is a selectable variable; signal means coupled with said computer means and providing said signals $(x_i, y_i, z_i)$ and $(x_e, y_e, z_e)$ thereto with said signals $(x_i, y_i, z_i)$ representing the three dimensional co-ordinates

of selected points on the object and with said signals $(x_e, y_e, z_e)$ representing the three dimensional co-ordinates of the location of the observation point from which the object is seen; and planar plotting means coupled with said computer means and responsive to said signals $(v_i, w_i)$ to make a drawing of the object.

## THE REJECTIONS

The examiner's first ground of rejection, applied to all the claims here in issue, was insufficient disclosure under the first paragraph of 35 U.S.C. § 112 and Patent Office Rule 71(b). The examiner contended that since applicants had merely set forth equations and asserted that the equations could be readily programmed by programmers of ordinary skill, they had not set forth *how* the automatic equipment of their invention was to be made, but merely invited programmers to solve applicants' problems. The board reversed this rejection, noting that the statute required only enough information · in the disclosure to enable persons of ordinary skill to practice the invention. The board recognized that applicants' equations could be readily programmed into the computer by those skilled in programming, and held that the disclosure was therefore sufficient. See In re Naquin, 398 F.2d 863, 55 CCPA 1428 (1968). Since the board reversed this ground of rejection, it is not in issue here, but we mention it because of its relationship to obviousness, which we shall later discuss.

The apparatus claims were further rejected by the examiner as failing to define a machine within the statutory class (35 U.S.C. § 101) "since for patentability they were predicated on mental steps," citing a patent to Tripp[2] which, said the examiner, showed that it was old to combine a programmed digital computer with a plotting device. The examiner indicated that the novelty in applicants' claims therefore lay in the equations with which the computer was

programmed, and that this is not a *structural* difference over the prior art. The examiner concluded that since the programming was not structural, the claims were "predicated for patentability on mental steps." As to the method claim, the examiner similarly argued that since the novelty of applicants' claimed invention lay in the particular equations to be solved, the invention is non-statutory, citing Ex parte Meinhardt, 1907 C.D. 238; In re Abrams, 188 F.2d 165, 38 CCPA 945 (1951); In re Yuan, 188 F.2d 377, 38 CCPA 967 (1951); and In re Middleton, ·167 F.2d 1012, 35 CCPA 1166 (1948). The board affirmed these rejections, but it reasoned with respect to the apparatus claims that the issues were analogous to the "printed matter" cases such as Ex parte Gwinn, 112 USPQ 439 (PO Bd. App.1955). Regarding these cases, the board said:

> The rationale of these cases appears to be that the law does not favor the granting of a patent for non-statutory subject matter by indirection, and this should be applicable to a mathematical formula or an algorithm as well as to printed text, when the real substance of the contribution by its originator clearly is unpatentable in its own right.

> Turning to apparatus claims 8 and 18 to 21, we note that the only apparatus recited is the admittedly old computer and plotting machine and the sole distinction presented therein upon which patentability could be predicated is the identification in the claims of the meaning which certain signals represent to. the human mind, or the algorithm which the computer is to solve. We find that these claims are founded on non-statutory subject matter.

As to method claim 13, the board rejected applicants' contention that the claim defines a new use of an old machine within the meaning of 35 U.S.C. § 100(b), and ruled that only a new re-

---

2. U.S. Patent 3,066,868, filed Nov. 15, 1956, issued Dec. 4, 1962.

sult was defined by the claim, the use being the old use of solving equations and plotting the results.

The board nowhere mentioned "mental steps" in its affirmance of the examiner's rejections based on non-statutory subject matter, but it expressly adopted "the reasons set forth in the Examiner's Answer * * * and not inconsistent herewith." While such a statement tends to cloud and complicate the issues before this Court, we address ourselves to the several rationales involved in these rejections, all of which were asserted before our recent decision in In re Prater and Wei, 415 F.2d 1393, 56 CCPA —— (1969).

■ Looking first at the apparatus claims, we see no recitation therein of mental steps, nor of any element requiring or even permitting the incorporation of human faculties in the apparatus. These claims recite, and can be infringed only by, a digital computer in a certain physical condition, i. e., electro-mechanically set or programmed to carry out the recited routine. The claims also define the invention as having plotting means for drawing lines or for illustrating an object. When such functional language is used in a claim, 35 U.S.C. § 112 states that "such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." The specification here mentions only mechanical drafting machines. The claims therefore cover, under section 112, only such mechanical drafting machines and their equivalents. We know of no authority for holding that a human being, such as a draftsman, could ever be the equivalent of a machine disclosed in a patent application, and we are not prepared to so hold in this case. Accordingly, we think it clear that applicants have not defined as their invention anything in which the human mind could be used as a component. Nor are the "printed matter" cases, cited by the board, supra, controlling as to these apparatus claims either on the facts or in principle. On their facts, those cases dealt with claims defining as the invention certain novel arrangements of printed lines or characters, useful and intelligible only to the human mind. Here the invention as defined by the claims *requires* that the information be processed not by the mind but by a machine, the computer, and that the drawing be done not by a draftsman but by a plotting machine. Those "printed matter" cases therefore have no factual relevance here.

A much closer question arises, however, when we consider the *principle* extracted by the examiner from the mental step cases and by the board from the printed matter cases. The principle may, we think, be fairly stated as follows: If, in an invention defined by a claim, the novelty is indicated by an expression which does not itself fit in a statutory class (in this case not a machine or a part thereof), then the whole invention is non-statutory since all else in the claim is old. We do not believe this view is correct under the Patent Act and the case law thus far developed.

■ We think it is clear that in enacting section 101 Congress meant to exclude principles or laws of nature and mathematics, of which equations are an example, from even temporary monopolization by patent. Accordingly, no rule of law should be announced which would impress a monopoly upon all uses of the equations disclosed by appellants here in their patent application. To allow the claims in issue here would not prohibit all uses of those equations. As we have pointed out above, a member of the public would have to do much more than use the equations to infringe any of these claims. He would have to use them in the physical equipment recited in the claim. Moreover, all machines function according to laws of physics which can be mathematically set forth if known. We cannot deny patents on machines merely because their novelty may be explained in terms of such laws if we are to obey the mandate of Congress that a machine is subject matter for a patent. We should not penalize the inventor who

makes his invention by discovering new and unobvious mathematical relationships which he then utilizes in a machine, as against the inventor who makes the *same machine* by trial and error and does not disclose the laws by which it operates. The mandate of Congress in 35 U.S.C. § 103 is that "patentability shall not be negatived by the manner in which the invention was made." For the foregoing reasons, we conclude that under the statute the apparatus herein claimed constitutes statutory subject matter.

The case law leads to the same conclusion. *Prater*, supra, dealt in part with an apparatus claim see 415 F.2d 1393 which, while it did not set forth specific equations, defined the invention by reference to "a set of linear simultaneous equations" and "the determinant for a first set of said equations." The Board of Appeals in that case held, as did the examiner here, that the novelty resided in the mathematical computations which, being in themselves non-statutory, rendered the claimed invention non-statutory. We held the claim to be patentable, noting that no "mental steps" issue was involved because the means-plus-function language did not encompass a human being. 415 F.2d 1393. The same type of language is used in the apparatus claims here. The same result must obtain, i. e., no question of mental steps is raised.

■ There is one further rationale used by both the board and the examiner, namely, that the provision of new signals to be stored by the computer does not make it a new machine, i. e. it is *structurally* the same, no matter how new, useful and unobvious the result. This rationale really goes more to novelty than to statutory subject matter but it appears to be at the heart of the present controversy. To this question we say that if a machine is programmed in a certain new and unobvious way, it is physically different from the machine without that program; its memory ele-

ments are differently arranged. The fact that these physical changes are invisible to the eye should not tempt us to conclude that the machine has not been changed. If a new machine has not been invented, certainly a "new and useful improvement" of the unprogrammed machine has been, and Congress has said in 35 U.S.C. § 101 that such improvements are statutory subject matter for a patent. It may well be that the vast majority of newly programmed machines are obvious to those skilled in the art and hence unpatentable under 35 U.S.C. § 103. We are concluding here that such machines are statutory under 35 U.S.C. § 101, and that claims defining them must be judged for patentability in light of the prior art. The solicitor's brief, while stating agreement with all the grounds of rejection applied by the board, does not discuss the questions of statutory subject matter. The solicitor cites no authorities to us on this point and instead relies upon section 103 in urging us to affirm the rejections for prior art reasons.

Turning now to method claim 13, it recites three steps: Programming the computer to compute positions of planar axes, programming the computer to render an output representative of the coordinates of planar point positions, and applying the output of the computer to a plotting apparatus. The solicitor's brief does not cite any authority to support the contention that this claim is drawn to non-statutory subject matter. We think, however, that this question is answered by what we said in *Prater*, supra. There we looked first to the disclosure and said: "It would appear that the *disclosure* of apparatus for performing the process wholly without human intervention merely shows that the *disclosed* process does not fall within the so-called 'mental steps' exclusion." 415 F.2d 1403 (emphasis in original). We then looked to the claims and found that they were broad enough to cover performance of the process in the mind without the use of machinery. We did not

rule then on the question of whether claims covering truly mental steps could be statutory under 35 U.S.C. § 101. We held that the applicants were claiming more than they regarded as their invention, thus rendering the claims unpatentable under the second paragraph of 35 U.S.C. § 112.

In the case now before us, the disclosure shows only machinery for carrying out the portrayal process. In fact it is the chief object of the invention to eliminate the drudgery involved in a draftsman's making the desired portrayals. Accordingly, a statutory process is here disclosed. Looking then to method claim 13, we find that it in no way covers any mental steps but requires both a "digital computer" and a "planar plotting apparatus" to carry it out. To find that the claimed process could be done mentally would require us to hold that a human mind is a digital computer or its equivalent, and that a draftsman is a planar plotting apparatus or its equivalent. On the facts of this case we are unwilling so to hold. We conclude that the method defined by claim 13 is statutory, and its patentability must be judged in light of the prior art.

■ Turning to the prior art, the examiner applied Taylor[3] alone under 35 U.S.C. § 103 against all the claims, while the board applied Taylor in view of Tripp. We agree with the examiner's application of Taylor alone against claims 8, 13 and 18.

Taylor shows the computation of the positions of points of a three-dimensional object on a plane of projection, as applicants define in claims 8, 13 and 18. These claims then add only one more limitation: in claim 13 the step of applying the computer output to a plotting apparatus, and in claims 8 and 18 the addition of the plotting machine as part of the claimed structure. This limitation is insufficient to define an invention which is unobvious over Taylor because,

as applicants argued in the Patent Office on the question of sufficiency of their disclosure, any person skilled in the art would know *how* to take the computer output and use it to control a drafting machine. The desirability of eliminating the draftsman in the Taylor teaching would have been apparent when applicants made their invention, and since any person skilled in the art would, by applicants' own argument, know how to do so, we must conclude that the invention defined by claims 8, 13 and 18 was obvious.

In claim 19 the equations disclosed in the application are used to define the condition of the digital computer. The obviousness issue here is whether the claimed invention as a whole, i. e. the entire apparatus defined by claim 19, would have been obvious to one of ordinary skill in the art in view of the teachings of Taylor. Tripp does not attempt to solve the three-to-two dimensional geometry problems to which appellants' claims 19–21 and Taylor's disclosure are addressed but merely shows computerized drawing in general. It therefore appears that Tripp does not shed any light on the specific obviousness question with which we are concerned. The solicitor, in his brief and oral argument, similarly de-emphasized Tripp and concentrated on Taylor alone.

Taylor's object is to partially automate the tedious process of making various kinds of drawings of three-dimensional objects. Applicants' object is to further automate the production of these drawings. Their invention as defined by claim 19 does this in two ways: It adds the plotting machine at the output end of the computer, and it conditions the computer in a new way to perform the data transformations. The first addition alone would not have saved the invention from obviousness, as we discussed above. We believe the second addition, the new programming claimed,

---

3. U.S. Patent 3,153,224 filed Feb. 23, 1960, issued Oct. 13, 1964.

does make the invention as a whole un-obvious.

The Taylor equations for finding the planar coordinates ($f_1$, $f_2$) are:

$$f_1 = \frac{\sqrt{(a_1-b_1)^2+(a_2-b_2)^2}\,[(a_3-b_3)](a_1-b_1)(a_1-c_1)+(a_2-b_2)(a_2-b_2)]]-(a_3-c_3)\sqrt{(a_1-b_1)^2+(a_2-b_2)^2}}{(a_1-b_1)(a_1-c_1)+(a_2-b_2)(a_2-c_2)+(a_3-b_3)(a_3-c_3)}$$

$$f_2 = \frac{[(a_1-b_1)^2+(a_2-b_2)^2+(a_3-\check{b}_3)^2]\,[(a_1-b_1)(a_2-c_2)-(a_2-b_2)(a_1-c_1)]}{\sqrt{(a_1-b_1)^2+(a_2-b_2)^2}\,[(a_1-b_1)(a_1-c_1)+(a_2-b_2)(a_2-c_2)+(a_3-b_3)(a_3-c_3)]}$$

———◆———

where $a$ is the observation point, $b$ is the penetration point of a sight line normal to the projection plane, and $c$ is a typical object point to be portrayed. The subscripts 1, 2 and 3 refer to the three coordinates of each of the points $a$, $b$ and $c$.

As far as the record before us reveals, Taylor's expression for the three-to-two dimensional transformation was the *only* way it could be done at the time applicants filed. There is nothing in the record to suggest that there was any possibility of the simplified programming claimed by the applicants in claim 19. The Patent Office belatedly, by an appendix to the Solicitor's brief, attempts to show that Taylor's equations can be manipulated to an identity with the equations appearing in claim 19. In so doing the solicitor has had the benefit of seeing applicants' equations, and with this hindsight a mathematical identity is revealed. There is nothing to suggest that, within the context of automated drawing, one of ordinary mathematical skill armed with the Taylor reference would be able to discover the simpler equations which are the basis of the claimed programming. Accordingly, we conclude that claim 19 as a whole defines an invention which is not obvious in view of the prior art. The same reasoning and the same conclusion apply to claims 20 and 21.

Lastly, the examiner rejected claims 19–21 as being "drawn to the old combination of a programmed computer and a plotting device, which combination is shown to be old by Tripp." The board apparently affirmed this rejection, but seems to have mixed it into the discussion of novelty and obviousness. The rejection was stated by the examiner to be under section 112 and we will so treat the board's affirmance of it.

The rationale of an old combination rejection is stated in MPEP 706.03(j) as follows: "The fact that an applicant has improved one element of a combination which may be *per se* patentable does not entitle him to a claim to the improved element in combination with old elements where the elements perform no new function in the combination." This statement has the support of many cases. See, e. g., Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938). Why an applicant should not be so entitled is not clear. Many cases have said that the combination claim reciting only one new element with no new result is overclaiming or claiming more than the applicant invented. Such statements are indeed puzzling in view of the fact that the addition of elements to a claim *narrows* its scope and thereby creates a lesser monopoly. Others have said the combination is not new, or is obvious, if no new coaction or result is obtained. This too is unsound, since it is not the result which is to be patented but the recited machine, composition, etc. If the prior art does not show or suggest the improved element itself, it defies logical reasoning to say that the same prior art suggests the use of that improved element in a combination.

Our primary concern, however, is not with the soundness of the underlying policy, if any, for old combination rejections; it is with whether such rejections are proper under the present statute. The Patent Office Board of Appeals has recognized this problem in Ex parte Des Granges, 864 O.G. 712, 162 USPQ 379 (1968). There the board found that there was a statutory basis for the rejection in that portion of section 112 which requires that the claims specifically point out and distinctly claim the invention. We agree. We think that that statutory language is the only proper basis for an old combination rejection, and in applying the rejection that language determines what an applicant has a right and an obligation to do.

Applying the section 112 language to claims 19–21, we do not see, and the examiner has not stated, how any of the claims would be made more particular or distinct by eliminating the plotting machine limitation from the body of the claim. Indeed the opposite appears to be true, since moving the recitation of the plotting machine to the preamble (in the continental manner or in the manner permitted by Ex parte Jepson, 1917 C.D. 62) would greatly increase the number of words in the preamble and impair, rather than enhance, the intelligibility of the claim. Neither would complete elimination of the plotting machine recitation make the claims more particular or distinct, since the monopoly defined by the claims would then be substantially broadened beyond the automatic drafting art. We therefore conclude that the rejection of claims 19–21 on the ground of old combination under 35 U.S.C. § 112 was erroneous.

As to claims 8, 13 and 18 the decision of the board is affirmed; as to claims 19–21 the decision of the board is reversed.

Modified.