**Application of Robert G. BROWN.**

**Patent Appeal No. 8887.**

United States Court of Customs
and Patent Appeals.

May 17, 1973.

Rehearing Denied Aug 2, 1973.

Timothy L. Tilton, James J. Hill, Chicago, Ill. (Dawson, Tilton, Fallon & Lungmus, Chicago, Ill.), attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Jere W. Sears, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, ALMOND, BALDWIN, and LANE, Judges.

ALMOND, Senior Judge.

This appeal is from the decision of the Patent Office Board of Appeals sustaining the examiner's rejection of claims 9 through 13, all the remaining claims of appellant's application serial No. 403,522, filed October 13, 1964, entitled "Terrestrial Navigation System." No claim has been allowed.

The invention relates to a terrestrial nagivation system that is capable of all-weather operation. An object as stated is:

\* \* \* to provide a marine navigation system comprising an inertial system including a computer, a non-inertial velocity reference, and a third means such as [a] radiometric tracker or some other means of obtaining celestial angular measurements. The elements are interconnected in such a way that the integrated system is an effective, all-weather navigational apparatus with bounded errors, even in the event that only one celestial body may be tracked over a portion of a 24-hour cycle.

The application sets out "a block-diagram representation of the apparatus constituting the inventive system" in Fig. 1, reproduced below:

FIG. I
BASIC NAVIGATION SYSTEM WITH BOUNDED ERRORS

948

The application states:

In the drawing, it is seen that four natured components are employed in the basic navigation system. One is a pure inertial system which includes an inertial platform and sensors similar to that provided by the Autonetics Division of North American Aviation, Inc. under the designation N7.

Also provided is a computer which serves a multi-purpose role as a necessary part of the pure inertial system and as the data-processing center for all components of the system. This computer might take the form of a programmable, general-purpose digital computer, such as an IBM 7074 (but not necessarily as large physically or in memory capacity), with appropriate analog-to-digital interfacing to other components in the system where necessary. The computer must have the capability of solving a set of recursive equations according to the Kalman least-squares filtering theory, as will be explained presently. It also must have the capability of handling the other data-processing chores encountered in a conventional hybrid-inertial system application.

The inventive system also includes a celestial tracker which is capable of tracking one or more celestial bodies, and this might take the form of the radiometric sun-moon tracker supplied by Collins Radio Company under the designation AN/SRN–4.

The inventive system also includes a non-inertial velocity reference instrument which may, in a marine application, be an electromagnetic log similar to that currently used by the United States Navy.

Additionally, the system may receive from other sources, such as LORAN, discrete position information, and these pieces of information will be incorporated into [the] system through the computer.

All of system components just described need not be operative at the same time. For example, the invention described here is an effective navigational device if the tracker is operative for only a portion of a 24-hour day, as would be the case in sun tracking.

The brief [1] states that "the present invention corrects the data received from the pure inertial system by estimating the propagation in time of the errors contained in that system and subtracting these error estimates from the signal outputs of the pure inertial system." The manner in which appellant obtains the error estimates is best described in the brief as follows:

The present invention takes the output signals of the pure inertial system (with its attendant errors) and the output signals of the non-inertial sources of navigation information (with its own attendant errors); and it feeds this information into a data processor where a difference is taken between corresponding ones of the signals. Thus, a third set of signals is generated which is representative only of the *difference* between the errors in the inertial data and the errors in the non-inertial data. It is important to realize that the true navigation data, being identical for both inertial and non-inertial sources of like functioning will be subtracted out, so that only the *difference in error signals* is subsequently operated upon. These difference error signals are operated on according to least-squares digital filtering techniques which were developed by Kalman * * *, and hence referred to as "Kalman filtering".

The application cites two published articles in connection with reference "to the recursive equations of Kalman's least-squares filtering theory," [2] according to which the system is operated.

1. Appellant's brief presents a description that is more informative in a number of respects than the application disclosure.

2. R. E. Kalman, "A New Approach to Linear Filtering and Prediction Problems," ASME Trans., J. of Basic Engr.,

Claim 9 reads (with paragraphing as employed by appellant at oral argument):

9. A system for terrestrial navigation comprising:

inertial means including a plurality of inertial sensors defining a platform, said sensors generating a first set of signals representative of navigation data in a reference co-ordinate frame;

non-inertial means for generating a second set of signals representative of navigation data having a predetermined relation to the navigation data generated by said inertial means;

signal processing means receiving said first and second sets of signals for generating signals representative respectively of estimates of corresponding sets of predetermined navigational parameters,

said signal processing means including

difference means for generating signals representative of the differences between corresponding parameters of said sets of navigational parameters,

said signal processing means further including

discrete-time recursive least-squares filter means receiving said difference signals for generating signals representative of estimates of errors in said first set of signals; and

correction means for correcting said first set of signals in response to said signals representative of the error estimates in said first set of signals to thereby provide a third set of signals representative of improved estimates of said navigational parameters,

said filter means characterized by a discrete-time linear state model with uncorrelated stochastic driving functions,

said model representing the dynamic variation of the errors in platform orientation, position and velocity in said first set of signals,

said model further representing time-correlated errors in said inertial sensors and time-correlated errors in said first set of signals,

said filter means further characterized by defining a linear relation between the states in said state model and said difference signals.

Claims 10–13 are either directly or indirectly dependent on claim 9 and, for reasons which will become apparent, require no further discussion.

The claims stand rejected for failure to comply with 35 U.S.C. § 112, particularly the first paragraph thereof, and as unpatentable over patents to Seliger et al.[3] and Manoni.[4] Since we find the rejection for failure of the application to disclose the invention as required by the first paragraph of section 112 must be sustained, none of the other rejections, which were in part alternative to this section 112 rejection, will be considered.

The examiner considered the application disclosure deficient in failing to set forth the manner of use of a general purpose computer, such as the IBM 7074, mentioned in the specification as used in "simulated test runs," to "solve the set of recursive equations according to the Kalman least-squares filtering theory" to achieve appellant's objectives, "particularly in view of applicant's position that the novelty in the case is the manner of applying * * * [that] theory to information processing." After specifically criticizing the sufficiency

V. 82, pp. 35–45, Mar. 1960; and R. E. Kalman and R. S. Bucy, "New Results in Linear Filtering and Prediction Theory," ASME Trans., J. of Basic Engr., Mar. 1961, pp. 95–108.

3. No. 3,214,575, granted October 26, 1965 on an application filed September 14, 1961.

4. No. 3,342,982, granted September 19, 1967, on an application filed September 25, 1961.

of the disclosure insofar as it mentions an electromagnetic log as a possible Non-Inertial Velocity Reference (see Fig. 1), the examiner stated:

It is noted, however, that the use of hollow rectangles to indicate structure of this device will be considered justified if applicant fully identifies a suitable prior art disclosure thereof, and enters a teaching in the specification of how to incorporate such device into the disclosed combination.

The examiner further stated:

The following are illustrative recitations in these new claims of "means" which are not thought to find adequate counterpart apparatus support in the specification:

In claim 9:—signal processing means
—difference means
—recursive least-squares filter means
—means for correcting said first set of signals.

Appellant responded by referring to a publication for a description of a magnetic log and by submitting two affidavits directed to the question of adequacy of the disclosure. One affidavit was that of the inventor Brown, a Ph.D. in electrical engineering, experienced in inertial navigation systems design work, and the other by Robert A. Sharpe, who had a master's degree in electrical engineering and was an experienced programmer of digital computers to solve scientific mathematical equations. These affidavits, which will be discussed in more detail later, were regarded by the examiner as failing to demonstrate that the application disclosure was adequate.

The board agreed with the examiner that the application did not comply with the disclosure requirement of section 112, including the position that the affidavits were not persuasive on that point.

### Opinion

The only drawing in the application representing the apparatus claimed is the block diagram of Fig. 1, supra.

Systems said to be suitable for certain of the blocks are identified broadly in the specification, as by reference to "a pure inertial system which includes an inertial platform and sensors *similar to* that provided by the Autonetics Division of North American Aviation, Inc. under the designation N 7" (emphasis ours) and "sources, such as LORAN," of "discrete position information." But no particular description of the various output signals from those systems or of the operative relationship between them to utilize such signals is set forth. In effect, the application might be regarded as leaving significant operative relationships to be determined from the mathematical equations set out, including those embodying Kalman's least-squares filtering theory. While a "mathematical model" of the system utilizing a digital computer is discussed in the specification, the program for the computer is not disclosed even though such a program is said to have been actually prepared for the mathematical model. Under the circumstances, the examiner and board clearly had a reasonable basis for questioning the adequacy of the disclosure to enable a person of ordinary skill in the art to make and use a navigation system as defined in the claims. See In re Ghiron, 442 F.2d 985, 58 CCPA 1207; In re Marzocchi, 58 CCPA 1069, 439 F. 2d 220, 169 USPQ 367 (1971).

Appellant argues that his disclosure was adequate, relying largely on the aforementioned affidavits of Brown and Sharpe as evidence. He regards the invention as involving two technologies, the art of navigation systems and the art of programming digital computers, and urges that the knowledge of persons skilled in both technologies is the criterion for sufficiency here, relying on In re Naquin, 398 F.2d 863, 55 CCPA 1428 (1968). Clearly, the examiner and the board accepted that criterion, and we do also. This itself points to a very significant distinction over *Naquin* where the examiner considered the sufficiency of the disclosure in terms of the person skilled in only one of the two technolo-

gies involved and the board, although disagreeing with that legal criterion, erroneously sustained the examiner on the basis that it could not say "as a matter of law" that the examiner erred.

The question here narrows down to whether the affidavits of Brown and Sharpe demonstrate that persons skilled in the two fields would have been taught to make and use the invention. The principal factual assertions of the affidavits relate to Sharpe's writing, in 1963, a "computer program to perform the computations necessary to solve" a "set of recursive equations relating to what * * * Brown described as a navigational problem." Brown stated that he met with Sharpe "on several occasions to discuss the problem with him and explain the definitions of the terms" and that "each of said meetings lasted for a period of not longer than about two hours." Brown further asserted that, at the time of the meetings, he "had prepared a description of a solution of the problem which included substantially no information in addition to that set forth in * * * [his] application as filed." Sharpe acknowledged receipt from Brown of "a set of papers describing the problem in mathematical terms. "He stated that he met with Brown "on several occasions * * * for brief periods to discuss the definition of terms used in * * * [the] set of papers" and that he worked "only from said set of papers and the information transmitted in said meetings." Sharpe additionally stated that "the information conveyed to him via said set of papers and · said meetings with * * * Brown was substantially the same information as is disclosed in * * * [the present] application."

Brown further asserted that "the level of skill of programming of scientific, mathematical problems prior to filing the instant application reached a relatively high degree of sophistication in mathematics as compared with most mechanical and other electrical arts." He stated that the skilled programmer at the time typically had "a baccalaureate degree in engineering or mathematics," that some had the "equivalent formal education required for a Masters Degree," and that "such a person * * * would need no further disclosure [than the application] in order to enable him to solve these equations." Brown concluded:

That, in his opinion, the implementation of such program to perform the computations defined in Equations (4)-(8) of the application was well within the skill of the art at the time of the invention; and that the disclosure set forth in said application as filed would enable a person skilled in the art at the time of invention to practice the invention.

We do not find the affidavits to overcome the objections properly raised as to the adequacy of the application disclosure by the examiner and board. The fact that Sharpe had actually produced a computer program, not disclosed in the application, to solve the recursive equations in the mathematical model does not demonstrate that the application disclosure would have taught a person of ordinary skill in the art how to make and use the claimed system. It is not factually established that Brown did not convey to him vital information in addition to that set out in the application. The affiants' characterization of the information conveyed as "substantially" the same as that in the application amounts to the conclusions of the affiants without any revelation of the facts on which the conclusions were based. Certainly "several" meetings each lasting no longer than two hours, could have afforded an opportunity to convey additional information that was critical to an adequate disclosure without the affiants with their high level of scientific training actually recognizing it.

The assertion of Sharpe that no disclosure additional to that in the application would have been necessary to enable a person skilled in scientific programming to prepare a program to solve the recursive equations is primarily a matter of opinion tied into the ultimate is-

sue. While we do not ignore that opinion, we do not consider it as significant factually as the more basic assertions, accepted by the court in *Naquin*, that "the average computer programmer is familiar with subroutines for running integration, addition, etc."

Moreover, the deficiencies which the examiner and board found in appellant's application were not based only on the failure to disclose the computer program used with appellant's "mathematical model." Thus the board stated:

> * * * we note that the claims are not directed to a computer alone but to a system of apparatus that includes celestial, inertial and radio-metric units which must coact with and be accommodated by the computer into an operative system of apparatus. As we understand Appellant's affidavits the programming effort alleged to be obvious was that of solving certain equations on a computer, not in a program which coordinated the various discrete units into apparatus that accepts physical inputs and yield physical outputs. In other words, Appellant's asserted computer program is not coextensive with the scope of the appealed claims but is directed to the portion thereof which the Examiner has characterized as a "mathematical model." Appellant's contention that application to actual apparatus would be too costly is not convincing because the monopoly sought by the appealed claims is not of the solution. of a mathematical model but of an extensive installation for which the record presents no details of how this would be built nor any evidence that it would have been obvious to supply the missing parts of the system.

We consider that position sound and do not find that appellant has answered it. His disclosure is basically a mathematical analysis of a procedure suitable for use in an inertial navigational system which is blended with non-inertial sensing means. Its substance resembles more that in a theoretical thesis than in a description of an operative system.

The most tangible disclosure is of a "mathematical model" of the system. While a successful mathematical model may well have value in developing a practical system, a discussion of such a model would not necessarily be adequate to disclose how to make the actual navigation system, particularly where there is so little description of the operative relationships of the elements as here.

Appellant cites In re Bernhart, 417 F.2d 1395, 57 CCPA 737 (1969), but that case does not establish any rule contrary to the principles applied here. No rejection for inadequate disclosure was before the court there. The board, an augmented panel including the three members involved here, did reverse a rejection for inadequacy of disclosure. However, the issues raised by such a rejection involve factual considerations which differ from case to case. Indeed, the court regarded the mathematical equations to be programmed in *Bernhart* to be simpler, and apparently therefore easier to program, than those of a prior art Taylor patent on which it sustained the rejection of certain of the claims.

Accordingly, the rejection of claims 9–13 for inadequacy of the application disclosure under the first paragraph of section 112 is affirmed.

Affirmed.