**Application of Thomas A. WARMUS.**

**Patent Appeal No. 76–680.**

United States Court of Customs and Patent Appeals.

Sept. 22, 1977.

Rehearing Denied Nov. 17, 1977.

Thomas N. Young, Krass & Young, Troy, Mich., attorneys of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Thomas E. Lynch, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Judges, and HERBERT N. MALETZ, Associate Judge, United States Customs Court.

MARKEY, Chief Judge.

Appeal from a decision of the Patent and Trademark Office (PTO) Board of Appeals, affirming single rejections under 35 U.S.C. §§ 100, 101, and 102, and two rejections under 35 U.S.C. § 103 of claims 1–18 in applicant's application serial No. 34,174, filed May 4, 1970, entitled "Computer Prepared Contract Plan." We affirm the decision on one of the 35 U.S.C. § 103 rejections.

### The Invention

Warmus' invention is a method for computer-assisted preparation of motor vehicle sales documents. The invention is said to relieve the tedious and error-prone task of preparing a number of different documents, some of which involve difficult mathematical calculations.

As reflected in the drawing below, the method employs a commercially available (preferably a Burroughs L 2000) typing/computer unit (12, 14) programmed to assist document preparation. The sequence of steps includes: (a) placing a preorganized worksheet (25) into the typing unit (14); (b) instructing the machine (keys 24) to perform the preprogrammed step of automatically moving the type carriage from field-to-field on the worksheet as the operator manually enters data; (c) simultaneously storing data in an electronic memory (13) as those data are entered by the operator; (d) removing the worksheet (25); (e) placing a blank document form into the typing unit carriage; and (f) directing the machine (keys 24) to retrieve some of the data previously stored i. e., those needed for that particular form, and to enter such data on the form.

Fig. 1

Claim 1 is representative:

1. A method for preparing a series of documents incident to the sale of a motor vehicle using a digital computer having a memory and a keyboard-typewriter input-output unit for entering and outputting alphanumeric symbols and means for inputting instructions, carriage index signals, and document identification signals, said computer being programmed to move a typewriter carriage unit between data locations of each of several document types in response to document identification signals comprising the steps of: placing into the input-output unit a work sheet having predetermined locations for

the typewritten entry of all data concerning the sale; generating via the instruction input means a work sheet document identification signal to select a portion of said program to cause the carriage to move between said locations thereof after data is inserted and a carriage index signal is generated by the operator via the keyboard-typewriter; manually inserting via the keyboard-typewriter the data indicated at said locations; simultaneously storing said data in memory; operating the keyboard-typewriter to index the carriage after each data entry; removing the complete work sheet; placing into the input-output unit at least one additional sale document having spaces for some but not all of said data; and generating via said instruction input means an additional document identification signal to select another portion of the program and to cause the carriage to move between selected locations on said additional documents and to automatically retrieve from memory and enter data concerning the transaction in the locations therefor.

### The Rejection Under § 103 In View of Perkins and Burroughs

Perkins et al. No. 3,533,076 (Perkins) discloses the structure and functional features of a Burroughs L 2000 computer. The Burroughs brochure (Burroughs) discloses features and capabilities of an L 2000 computer.

In applying Perkins under § 102, the examiner stated:

The Perkins reference clearly shows the program keys (Fig. 1 elements 15) and the alpha-numeric keys (Fig. 1 elements 12, 13) for performing the operator-controlled or operator-guided steps of document identification, data entry and automatic retreival [sic] of data from memory for formatting individual documents (See Col. 2, lines 45–72 and Col. 3, lines 1–29). Display lights and legend strips are disclosed in Fig. 1 elements 17, 19, 21 and Col. 3, lines 8–29. The reference discloses a printer (Col. 3, lines 65–67) binary driven by the computer which prepares documents.

In applying Perkins and Burroughs under § 103, the examiner incorporated the above description of Perkins, stating:

Claims 1–18 are rejected as being obviously unpatentable over Perkins et al (of record) in view of Burroughs brochure No. 1037157 under 35 U.S.C. 103. The Perkins et al reference has been described in the previous Office Action which is incorporated herein. The brochure 1037157 is cited to illustrate operator control and the flexibility of printing various forms. Applicant's method is an obvious utilization of applications shown old by the brochure in the apparatus and method taught by Perkins et al.

### The Board

The board affirmed the foregoing rejection under § 103, adopting the quoted language of the examiner. Though the board intermixed with this rejection its view that the claims were nonstatutory under §§ 100 and 101, it is not necessary on this appeal to consider the claims in the light of §§ 100, 101, 102, or to consider a second rejection under § 103, based on Emerson No. 3,341,-819 and Boehnke No. 3,360,781 in view of Perkins. We express no opinion respecting these other rejections.

### Issue

Warmus admits that Perkins and Burroughs disclose the particular apparatus (L 2000) and the capabilities thereof preferred by Warmus in the practice of his invention. The only issue is whether Perkins and Burroughs establish that the claimed method would have been obvious.

### OPINION

Warmus emphasizes his data inputting procedure, arguing:

The principal area of distinction between the claimed invention and the suggested function of the billing computer [as disclosed by Perkins and Burroughs]

lies in the data input mode; this has been consistently argued as a point of novelty but has been brushed off by the Examiner and the Board throughout the prosecution history. * * * No such inputting mode is disclosed in the Perkins et al patent or in the Burroughs brochure. Perkins et al makes a general statement that data may be loaded into computer memory through the typewriter, presumably in some conventional fashion. There is, however, not an inkling of the computer driven control of the typewriter carriage to appropriate locations on an input data sheet of predetermined format. This is viewed as an important part of Appellant's invention, has been clearly set forth in the claims, and has been ignored in its content throughout the prosecution history. The work sheet also results in a hard copy of all data utilized in the sale transaction; there is no equivalent function in the Perkins et al patent or in the Burroughs brochure. [Brief for Appellant at 16–17.]

The solicitor's brief contains:

Although appellant places great emphasis on the preparation of the work sheet, it appears that a blank sheet of typing paper would provide the same function since the carriage and type ball positions are already determined by the program loaded into the system. * * * All that appellant would appear to have done is to preprint on the work sheet the identification of the input data to be entered by the operator at each carriage and type ball position, in lieu of computer generation of such identification prior to each data entry. [Brief for the Commissioner of Patents and Trademarks at 6.]

From the teachings of Perkins and Burroughs as a whole, we are convinced that the claimed method, including its data input procedure, would have been obvious to one of ordinary skill in the art.

Burroughs teaches the capabilities of the L 2000:

COMPLETE, INTERNAL CONTROL—Each program contains complete instructions for computation, *print formatting,*

*printer positioning,* forms movement, and peripheral input/output. * * * The complete program is stored internally. Each program change completely resets these controls for the operator.

* * * * * *

PROGRAMING FLEXIBILITY—Programs can include such accuracy and control functions as enforced sequence of data entry, account number verification, field capacity control and alpha/numeric compare. *Data may be entered in one logical, operator-preferred sequence and then processed and printed in an entirely different sequence.* No need to change operating procedures when you change processing procedures.

* * * * * *

POSITIVE OPERATOR CONTROL

* * * *Each key may represent a program segment, a complete sub-routine or several program segments.* These keys are selectively activated under program control to enforce a controlled sequence of operation.

* * * * * *

* * * *Printer positioning is electronically controlled by the application program.*

* * * * * *

INTERNAL CONTROL—*Regardless of the forms setup you prefer, the internal program controls all spacing through two basic commands.* (1) an nds. *(1) an "absolute" command that spaces any programmed number of lines. (2) a "space-to" command that spaces to any given line on a form. The L 2000 always "knows" where it is on each form, automatically protecting against over-typing or exceeding the form capacity. This eliminates operator decisions in handling continuation invoice pages.*

* * * * * *

MULTI–PURPOSE OUTPUT—Automatic data output can be used in several ways to extend systems throughput:

• To prepare media with customer and/or product information for automatic input in billing,

* To prepare media with complete invoice data for automatic invoice writing in completion billing systems.

[Emphasis added.]

With respect to the operation of the variable function keys of the L 2000 (Warmus' "Instruction Keys"), Perkins teaches:

In accordance with the principles of the present invention the operator of accounting apparatus incorporating the principles of the present invention is able to select one of a plurality of subroutines at programmer-determined points in the program. In this manner the operator is able to select the appropriate subroutine for accomplishing the desirable functions at the particular point of the program.

Burroughs teaches the use of an internal program to control printer positioning and format. Thus Burroughs supplies the "computer driven control of the typewriter carriage to appropriate locations on an input data sheet of predetermined format" which Warmus argues is absent from the prior art. According to Warmus' specification, a "document identification signal," which controls typewriter (printer) positioning, is generated by operation of an "Instruction Key" telling the machine which format (subroutine) to use. Both Burroughs and Perkins teach use of "Instruction Keys" to select a particular program segment or subroutine. Moreover, Burroughs explicitly teaches that "[d]ata may be entered in one logical, operator-preferred sequence and then processed and printed in an entirely different sequence." The prior art thus clearly suggests the provision of several subroutines governing particular printer positioning and format, selectable through operation of "Instruction Keys," and thus renders obvious the movement of a typewriter carriage to specified data locations in response to a "document identification signal" as claimed.

Regarding the claimed step of "placing into the input-output unit a work sheet having predetermined locations for the typewritten entry of all data concerning the sale," we agree with the solicitor. As mentioned, Perkins and Burroughs suggest programmed print format selectable by pressing "Instruction Keys," inputting data to the computer with a typing unit, and data entry in a logical sequence. Any particular data sequence would necessarily be determined by the machine program. We see no distinction between dictation of a data sequence with preprinted forms, with the machine operator filling in the blanks, and the use of blank paper, with the operator executing the sequence from memory or instructions. Nor does the claim language distinguish over that use of blank paper. There is thus no distinction in the claimed use of a "work sheet" over the input procedures taught by Perkins and Burroughs, and there is nothing in any of claims 1–18 patentably distinguishing over the teachings of Perkins and Burroughs.

Accordingly, the decision of the board is *affirmed.*

*AFFIRMED.*

BALDWIN, Judge, dissenting.

I do not agree with the majority opinion affirming the board's decision in this case. The opinion fails to carefully review several shortcomings of the board's opinion. I am of the opinion that independent claims 1 and 18 describe a limitation about which the cited references are silent, that limitation is:

placing into the input-output unit at least one additional sale document having spaces for some but not all of said data * * *.

There is no suggestion by any of the references of retrieving a proper subset of the data and using it in the context of the invention as a whole.

I am also of the opinion that the § 101 ground of rejection is without merit. *In re Chatfield,* 545 F.2d 152, 191 U.S.P.Q. 730 (Cust. & Pat.App.1976); *In re Noll,* 545 F.2d 141, 191 U.S.P.Q. 721 (Cust. & Pat.App. 1976).

In forming the rejection based on § 102 and § 103, the board repeatedly joined § 101. The court has, in the past, proscribed this practice. A comparison between a claim and prior art should not

dissect the claim but should make the invention *as a whole* the subject of the comparative analysis. *In re Bernhart,* 417 F.2d 1395, 57 C.C.P.A. 737, 163 U.S.P.Q. 611 (1969).

If the board believed that the above-stated limitation was suggested by the prior art, it would have said so, rather than rely on the strained and improper basis which it found necessary to employ. The majority reads more into the prior art than the PTO.