Application of George E. COMSTOCK and Thomas P. Gilmer, Jr.

Patent Appeal No. 8922.

United States Court of Customs and Patent Appeals.

Aug. 2, 1973.

Jay M. Cantor, Washington, D. C., attorney of record, for appellants. Charles R. Lepchinsky, of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jere W. Sears, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

LANE, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals sustaining the examiner's rejection of claims 1–21 of appellants' application Serial No. 595,694 filed November 21, 1966, entitled "Electronic Calculator" as based upon a specification which fails to comply with the requirements to 35 USC 112. We reverse.

### The Disclosure of the Invention

Briefly stated, the invention is an electronic calculator which has as its principal feature means for retrieving numerical data placed into storage on a first-in, first-out (hereafter FIFO) basis. The specification characterizes electronic calculators as suitable for performing repetitive arithmetic operations and thereby accomplish addition, subtraction, multiplication and division rapidly. A known calculator provided a storage, but retrieved data for subsequent calculation on a last-in, first-out basis. It is stated that retrieval on a FIFO basis materially reduces the effort of the operator, and likelihood of error.

The invention is summarily described in the specification as:

[A]n electronic calculator which comprises an arithmetic and control portion having keyboard means coupled thereto for manually entering data into the arithmetic and control portion. A storage having a plurality of registers is associated with the arithmetic and control portion and is adapted to have numeric data entered therein and retrieved therefrom in a first-in, first-out arrangement. The keyboard includes means for providing access to this storage to store numeric data therein and to recall such data therefrom. Once a list or sequence of numbers has been entered into the storage, the list may be used as often as desired, thereby reducing the need for repetitively entering data into the calculator. Further, since the numeric data in the storage is retrieved therefrom on a first-in, first-out arrangement, an operator may perform calculations requiring repetitive arithmetic operations from a list or sequence of data in an orderly manner and with a minimum number of key strokes, thereby reducing the probability of operator error and the need to keep notes on suitable means, such as a scratch pad.

Claim 1 is illustrative of the claims on appeal and reads as follows:

1. In a calculator, the combination comprising:

an arithmetic and control portion;

keyboard means coupled to said arithmetic and control portion for manually entering data into said arithmetic and control portion;

a storage coupled to said arithmetic and control portion having more than one register;

said storage including means to enter data therein and retrieve data therefrom in a first-in, first-out arrangement;

and said keyboard having means for providing access to said storage to store data therein and to recall such data therefrom.

The specification includes drawings and written discussion of the invention as well as a computer program which allegedly "provides the circuit claimed when the specified computer is so programmed." The "specified computer" is "an IBM Model 1620 computer having modification 831,128 which provides 63-character READ/PUNCH; including IBM accessory equipment as follows: * * *."

Appellants explain that the design of modern electronic calculators is tested

out by utilization of a suitably programmed computer. An appropriate keyboard is constructed, and there is provided an interface which "couples the coded data from the keyboard * * * to a processor [e. g. computer,] in a form suitable for use by the processor and in synchronization with the operation of the processor." The programmed processor constitutes the circuitry necessary for the performance of the arithmetic operations as well as the storage and retrieval functions. By properly programming the computer, the essential FIFO function can be effected.

Figure 9 of appellant's specification, reproduced below, illustrates the processor in a schematic form. The aforementioned modified IBM 1620 was given "as one embodiment of the invention" which provides the "logic functions illustrated within the dotted outline 13 of Fig. 9. * * *." The program disclosed in the specification allegedly provides the instructions for carrying out those logic functions.

FIG_9

[A7648]

### The Patent Office Position

In his Answer, the examiner articulated rejections based on the first and third paragraphs of § 112, and the board sustained both rejections. The premise of each rejection generally was the asserted failure of the specification to disclose particular structure conforming to the claimed calculator.

■ In In re Knowlton, Cust. & Pat. App., 481 F.2d 1357, decided July 26, 1973, we indicated that the third paragraph of § 112 does not impose a separate requirement that an invention claimed in "means-plus-function" form must be described apart from the description requirement expressed in the first paragraph of that section. The board in the present case held that the Patent Office has a duty to insure that "means-plus-function" can be construed in the manner set forth in the third paragraph. We reject that view to the extent that it necessarily leads to the position that the third paragraph of § 112 provides a basis for rejecting claims. The third paragraph permits a form of claiming and specifies some of the parameters of the construction of such claims. If construction is not required, there is no warrant for bringing the third paragraph into play. The essence of the rejections made here involves support for the claims and not construction of the claims. Following Knowlton, we would not sustain a rejection of the present claims on the third paragraph of § 112, and we accordingly consider that rejection no further. Our inquiry is limited to the first paragraph rejection and its supporting rationales.

Referring to fig. 9, as well as alternative embodiments depicted in other figures, the examiner stated that the differences between the invention and the prior art resided in the addition of FIFO storage, identified by the examiner as item 132 in the figure, and "additions to or re-arrangement of" the control circuit, identified as item 133. The examiner held the specification not to adequately teach those features of the invention. The examiner's position, in his own words, was as follows:

It is submitted that the IBM 1620 is made up of a multitude of circuits and logic functions and that a program is not a teaching of the precise structure that is being used. A showing that a particular program works on a particular computing machine is hardly a teaching of how to make and use an invention which incorporates some of the structure from the computing machine and identifies it by two boxes labeled "FIFO register" and "control". The applicant is putting the burden on the public of determining the specific structure to be used, which he himself has failed to disclose or is unable to disclose.

The examiner further held that:

[The disclosure] does not teach one skilled in the art how to make and use a desk calculator as claimed. * * *

There is no teaching of what particular structure should be "severed" from the IBM 1620 to incorporate in the claimed invention. To determine the structure would at best require undue experimentation in detailing for each step of the program precisely what structure in the computer is being used, identifying the critical structure, and incorporating the structure in the claimed invention, this final step itself often requiring experimentation as will be explained * * *.

The examiner later relied on certain references to establish the great difficulty of debugging and perfecting any particular computer system.

The board generally agreed with the examiner. It stated as follows:

A critical part of appellants' disclosure is a series of functional units depicted in the drawing as a series of connected rectangles and described in the specification as composed of a series of component units such as flip-flops, gates, switches, multivibrator and the like but without explanation as to how these units are to be interconnected so as to function as a uni-

tary device. This assemblage of units is then to be connected to a computer identified only by its proprietory name at points therein identified only by a proprietory number.

Later in its opinion, the board commented as follows:

We further note the absence from the record of any indication that the circuitry of the proprietory computer or that the proprietory assembly program to be used with the program listed in the specification were both available to the public at the time the application was filed since both have been made by appellants a condition to the adequacy of the disclosure.

During prosecution, appellants submitted a series of affidavits. Among the averments to be found therein are that calculators are designed through logic circuits; that in fact the program disclosed in this specification was the essence of the actual reduction to practice of the claimed invention; that one skilled in the art of programming would have no difficulty in understanding and using the disclosure; and that one of ordinary skill in the art would be capable of providing all of the physical components and interconnections needed to implement the logic functions disclosed. The board generally dismissed the affidavits as opinion evidence only and as failing to supply the necessary facts concerning structure which were held to be lacking.

## OPINION

■ We are not persuaded that the various reasons advanced by the examiner and the board support a rejection of the appealed claims under any of the requirements of the first paragraph of § 112. Rather, we are convinced that the conditions imposed by that section of the statute are satisfied.

At the heart of the several rationales exposited below is the allegation that the specification fails to provide a disclosure of structure commensurate with the claimed means, that is, those means associated with the programmed computer. We think that here, as in In re Knowlton, supra, the specification does disclose structure supporting those elements of the combination of means appearing in the appealed claims. The specific computer itself, physically altered by the disclosed specific modifications and especially as altered by the operation of the disclosed program, is the structure to which appellants properly direct attention as the actual, practical embodiment of the invention. Cf. In re Bernhart, 417 F.2d 1395, 1400, 57 CCPA 737, 744 (1969).

The board alluded to the proprietary nature of the structure of the IBM 1620 and the lack of access to information concerning that structure. Appellants offered, in a request for reconsideration, to supply such information, but the board in a subsequent decision made no specific response to that offer. Appellants contend that to submit the available technical manuals which set forth the intricacies of that structure would be to grossly encumber the record with unnecessary details concerning what is essentially an article of commerce. We agree and find no necessity for such a submission. We think it is somewhat unrealistic to suggest that the specification would become nonenabling in the future by change of manufacturer's requirements. See In re Coleman, 472 F.2d 1062 (CCPA 1973); In re Argoudelis, 434 F.2d 1390, 58 CCPA 769 (1970). In any event, if there were no way to convert programs designed for one model of computer to other models which replace it, the art of data processing would be thrust into a state of havoc far more detrimental to the public than the disadvantage which would flow from the particular invention here involved becoming nonenabling. The first paragraph of § 112 does require that the IBM 1620 was in existence at the time of filing of appellants' application, and no doubt that it was has been raised.

The examiner focused to some extent on a desk calculator and correctly distinguished such a structure from one which

**910**

utilizes a computer as an integral physical element. However, the claims are not directed to a *desk* calculator, but rather an "electronic calculator" without limitation as to size or field of use. There is no need for appellants to support the means claims at issue with particular structure comprising a desk calculator. The solicitor understands this to be the case, but expresses concern that appellants may some day assert their broad claims against those who "come up with practical embodiments." We see no basis for regarding the disclosed embodiment, which uses a computer, as impractical. However, assuming the solicitor meant a desk calculator, appellants' assertion in that situation would engender consideration of the rules of construction inherent in the third paragraph of § 112. It is not now before us.

We conclude that the specification describes the invention and enables one skilled in the art to make and use the invention. The requirements of § 112 are satisfied, and the decision of the board is, accordingly, reversed.

Reversed.