**Application of Damon M. GUNN.**

**Patent Appeal No. 76–564.**

United States Court of Customs and Patent Appeals.

July 15, 1976.

Jim Zegeer, Washington, D. C., atty. of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, R. V. Lupo, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This appeal is from the decision of the Patent and Trademark Office Board of Appeals affirming the rejection of claims 4, 6–10, and 12,[1] all of the claims remaining in application serial No. 107,421, filed January 18, 1971, for "Postal Apparatus and Method." We affirm.

### The Invention

The invention relates to an apparatus and method for computing the amount of postage and for printing this amount and the zip code of the addressee on the mail, thereby permitting self-service operation at the point of entry of the mail into the postal system and facilitating automatic mail sorting.

---

1. Claim 12 is dependent on claim 1, which has previously been cancelled. At oral hearing, counsel for appellant noted that claim 12 should be dependent on claim 4, and we have so treated it.

FIG-1

As seen in Figure 1, the apparatus includes manual means (13–17) for entering the zip code of the mail's destination into a computer (10), the data bank of the computer containing a cost factor for each locality (as represented by its zip code), and means (11) for weighing the mail and sending a corresponding signal to the computer, which then determines the amount of postage from the cost factor and the weight. The amount of postage, as well as the destination, is shown on the display (21), and when the amount due is paid (i. e., to coin receiver (24)), the amount of postage and the zip code are applied to the mail (by the label issuer (22) and applier (23)). Additional costs, such as insurance (18), can be entered into the computer and used in determining the amount of postage. Claims 4 and 10 are illustrative:

4. An apparatus for processing postal information manually entered into an apparatus for automatically computing postal type charges, and applying same to a package comprising in combination:

(a) first means for receiving a package and producing a first signal corresponding to the weight thereof;

(b) second means, responsive to a zip code address registered manually on an input to said second means by a customer, for producing a second signal corresponding to the postage rate applicable to that address said second means including a data bank having therein factors corresponding to the postal rate from the sending post office to all other zip code addresses and from which said second signal is produced;

(c) third means, responsive to said first signal and to said second signal, for producing a third signal corresponding to the postage for delivering the package to the zip code address registered manually by said customer; and

(d) fourth means, responsive to said third signal, for indicating the postage due and including means for printing the postage due, said fourth means additionally including means for printing the zip

code of the address in machine readable form and applying same to said package for subsequent automatic processing.

10. In a method of verifying postal information in a system for computing postage due on postal article to be mailed from a sending station to a receiving station having one of a plurality of addressee zip coded remote locations wherein the information is stored at said sending station including factors corresponding to postage rates chargeable from said sending station to all said addressee zip coded remote locations respectively; a first signal is produced corresponding to weight of the postal article; a second signal is produced corresponding to the addressee zip code of said one of a plurality of addressee zip coded remote locations; said second signal is used to determine which of said stored factors to apply against said first signal to produce a third signal corresponding thereto; and the said third signal is applied against said first signal to compute the postage due on said articles, the improvement comprising

displaying at said sending station the geographical locality having the addressee zip code for which said second signal is produced and the postage due on said postal article.

### Proceedings Below

The examiner rejected the claims under, *inter alia,* 35 U.S.C. § 112, paragraph 1, "for being based on subject matter which is inadequately disclosed." He noted that the disclosure has only one figure of apparatus and that this figure only shows "hollow rectangles"; moreover, he pointed out that the specification fails to describe this apparatus, disclosing only the function of the hollow rectangles. He concluded that "[w]hat has been disclosed is only an idea, which appellant leaves to the skill of the art to reduce to practice."

Appellant offered two affidavits to rebut the examiner's determination. The first is by K. Hoppman, a pioneer in the field of automated parcel handling, who has also produced coin feeding and counting systems and audio-visual equipment (*e. g.,* for the display of information). The relevant portion of the affidavit states:

4. Particularly directing attention to paragraph number 2 of the Official Action he states that in his opinion one skilled in the art would understand and be able to practice the invention as disclosed in said specification, and that

a. the thumb wheel switch mean 13–17 for entering zip code to computer 10, as are the devices for additional postal services, are conventional and well known in the art and could be dials, push buttons or like switches which correspond to a keyboard, for example, by which a computer is addressed;

b. the display means may be any conventional CRT display or like alphanumeric data display, including "NIXIE" tubes, etc.;

c. the label applier means 23 would likewise be conventional and, for example, be located in the side wall of scale 11. The label printed is actually the usual output of a computer which has been programmed for this service;

d. the coin receiver 24 would not require any more than an engineering adaptation of a conventional leverage dispensing machine coin receiver, or coin operated stamp dispensing machine currently in postal installations which may be modified to provide electrical signals to show the amount of coin or other money placed therein.

e. Once the electrical signals of these factors is [sic] available routine engineering and computer programming would enable the weight computer to perform its function.

The second affidavit is by J. Hunter, the Program Analysis Officer for Planning and New Development Department of the United States Postal Service. In pertinent part, his affidavit states:

4. Directing attention to paragraph numbered 4 of the Examiner's Answer of June 19, 1974, the Examiner has rejected

the claims for being based on subject matter which is inadequately disclosed, because applicant "failed to disclose the make-up of the calculator and the other devices disclosed by hollow rectangles in functional language" . . . . In my opinion each of the functions disclosed in the rectangles are [sic] accomplished by devices which are well known:

a) The use of the calculator for computing the postage is old art.

b) The switches, thumb wheel or push button as on a modern telephone, are old art,—basic to a keyboard by which a computer is addressed.

c) The display means is completely similar to that used on an ordinary office computer.

d) The label supplier is directly similar to that used for many years by the Postal Service for issuing metered postage.

e) The coin receiver of a type the Postal Service has used for years for the sale of stamps.

f) The electrical signals are the kind used for activation of common electrical computers by commercial scales.

The board affirmed the 35 U.S.C. § 112, paragraph 1, rejection of the examiner. It noted that appellant's disclosure completely lacks any specific information with regard to the structure of the computer, the coin receiver, the label issuer, the label applier, the amount display, and the geographical display. It pointed out that "[t]he disclosure fails to indicate which if any of the functionally labeled boxes are 'off the shelf' structures, and which are structures which must be specifically constructed or modified for appellant's system." Finally, it observed that the disclosure fails to show how the various structures should be "interconnected, timed and controlled so as to obtain the specific operations desired by appellant." Therefore, the board concluded that appellant's disclosure is "little more than an invitation to those skilled in the art to experiment extensively," and that the examiner had a reasonable basis for questioning the adequacy of appellant's disclosure.

The board then considered the two affidavits to determine whether they sufficiently rebut the examiner's basis for questioning sufficiency of disclosure. It found that the affidavits do not contain facts from which a conclusion concerning the sufficiency of the disclosure could be drawn, but merely recite the opinion of the affiants. Therefore, it concluded that "appellant has not carried his burden of proof to show that one skilled in the art could make and use the disclosed invention without undue experimentation."

OPINION

The single issue is whether appellant's disclosure is adequate to enable one skilled in the art to make and use the invention. More specifically, does the block diagram of Figure 1, which shows the apparatus by use of labeled rectangles, together with the description of the function of these rectangles in the specification, enable one skilled in the art to select specific structure for the apparatus without undue experimentation?

This court has stated that disclosure of apparatus with diagrams describing the function but not the structure of the apparatus is not, per se, fatal under the enablement requirement of 35 U.S.C. § 112, paragraph 1, as long as the structure is conventional and can be determined without an undue amount of experimentation. In In re Ghiron, 58 CCPA 1207, 1214, 442 F.2d 985, 991, 169 USPQ 723, 727 (1971), the court said:

As pointed out by the board, the specification does not particularly identify each of the elements represented by the blocks or the relationships therebetween, nor does it specify particular apparatus intended to carry out each function. This disclosure, stated the board, amounts to "no more than a direction to select apparatus from the prior art that will produce the results required to practice the process."

The rejection could not be sustained if this were the sole reasoning of the board with regard thereto. As urged by appellants, if such a selection would be "well

within the skill of persons of ordinary skill in the art", such functional-type clock diagrams may be acceptable and, in fact, preferable *if* they serve in conjunction with the rest of the specification to enable a person skilled in the art to make such a selection and practice the claimed invention with only a reasonable degree of routine experimentation.

In the present case, the board's conclusion regarding the inadequacy of appellant's disclosure was not based solely upon appellant's use of block diagrams, but, rather, upon the various shortcomings set forth above. We are persuaded that these are sufficient to establish a prima facie case of nonenablement and that the burden has shifted to appellant to show otherwise. *In re Ghiron, supra*; see *In re Scarbrough*, 500 F.2d 560, 182 USPQ 298 (CCPA 1974).

Appellant relies upon four patents [2] (cited by the examiner during prosecution of the application) and the affidavits of Hoppman and Hunter to overcome the doubts concerning enablement. He argues that the prior art shows that—

[o]nly two of the functions are new to self-service parcel mailers and those two are, per se, old art: (1) a printing of machine-readable Zip Codes and (2) the display of the name of the geographical locality of the manually entered addressee Zip Code to the postal customer as confirmation.

He also argues that the two affidavits show that one skilled in the art could have determined the specific structures for the apparatus and their interconnections without an undue amount of experimentation.

■ However, of the four patents, both Furlong and Salava issued *after* the filing date of appellant's application. They are not, therefore, evidence of subject matter known to "any person skilled in the art" as required by 35 U.S.C. § 112, paragraph 1, since their subject matter may have been known only to the patentees and the Patent and Trademark Office. *In re Scarbrough, supra; In re Glass*, 492 F.2d 1228, 181 USPQ 31 (CCPA 1974). We do not consider Adler, because appellant has included only one figure of the drawings of that patent, without any supporting description, in the record certified to this court, and this is not sufficient for the court "to use in preparing for oral argument and decision." *In re Locher*, 59 CCPA 977, 982, 455 F.2d 1396, 1401, 173 USPQ 172, 175 (1972).

■ The remaining patent to Wahlberg [3] shows that automatic parcel post mailing machines for calculating the postage due based upon the weight of the mail and a factor corresponding to the distance the mail is to be sent (*e. g.*, as represented by zone information) are conventional. Also, it shows that display means for showing the amount of postage due and coin receiver means for collecting this amount were known at the time appellant filed his application. Wahlberg states that "[a]uxiliary equipment to stamp the item with the proper data thereon, can readily be adapted to this machine by those skilled in the art," and, thus, provides some evidence that one skilled in the art could construct printing means.

■ However, Wahlberg does not show that one skilled in the art would have known the specific structure for selecting a zip code and the interconnection means for this structure and the computer. Moreover, it does not show that the means for print-

---

2. United States patent No. 3,057,547, to Adler, issued October 9, 1962; United States patent No. 3,594,735, to Furlong, issued July 20, 1971; United States patent No. 3,635,297, to Salava, issued January 18, 1972; and United States patent No. 3,290,491, to Wahlberg, issued December 6, 1966.

3. Appellant also refers to United States patent No. 3,692,988, to Dlugos, issued September 19,

1972, on an application filed the same date as appellant's application, "to evidence the level of skill in the postage calculator art on the day [appellant] filed his application." However, this patent does not show the level of skill of *any* person skilled in the art at the time appellant filed his application; it only shows the level of skill of the patentee. *Cf. In re Glass, supra.*

ing the zip code in machine-readable form was known to one skilled in the art or that the interconnection between the computer and this printing means was known. Finally, it is devoid of any showing that it was within the skill of the art to display the geographical locality of the addressee's zip code. Accordingly, we conclude that this patent is not sufficient to rebut the doubts of the Patent and Trademark Office concerning enablement.

■ The Hoppman and Hunter affidavits, which appellant offers to show the level of skill of the ordinary worker in the art, are not probative of such level of skill *as of the time appellant filed his application*, which is the relevant date for purposes of determining enablement under 35 U.S.C. § 112, paragraph 1. *In re Glass, supra; In re Eynde*, 480 F.2d 1364, 178 USPQ 470 (CCPA 1973). In Hoppman's affidavit, executed after appellant's filing date, the affiant states:

> [I]n his opinion one skilled in the art *would understand and be able to practice* the invention as disclosed in said specification . . . . [Emphasis supplied.]

In Hunter's affidavit, also executed after appellant's filing date, the affiant declares:

> In my opinion each of the functions disclosed in the rectangles are [sic] accomplished by devices which *are* well known . . . . [Emphasis supplied.]

As can be seen by the emphasized portions of the quoted matter, each of the affiants states what was known at the time he executed the affidavit, not what was known at the time appellant filed his application.

Appellant also argues that the Solicitor's position that it is prima facie reasonable to question block diagrams "flies directly in the face of [the admonition and direction of the Patent and Trademark Office] to all applicants to simplify the drawings wherever possible," citing 37 CFR 1.83.[4] However,

as indicated earlier, the board did much more than just point to the block diagrams as the basis for its conclusion regarding the inadequacy of appellant's disclosure.

■ Appellant further argues that "if there was only *method* Claim 10 in the application, *no* drawing would be necessary." Although the Patent and Trademark Office accepts applications (having only process claims) without a drawing, this does not warrant a conclusion that an application need not disclose apparatus to perform the method where the apparatus is not conventional. As this court said in *In re Ghiron, supra*, 58 CCPA at 1213, 442 F.2d at 991, 169 USPQ at 727:

> Appellants do not deny that the application must be adequate to teach how to practice the claimed method. If such practice requires particular apparatus . . . , it is axiomatic that the application must therefore provide a sufficient disclosure of that apparatus if such is not already available.

■ In view of the foregoing, we hold that appellant's evidence is insufficient to overcome the prima facie case of nonenablement established by the Patent and Trademark Office.

Accordingly, the decision of the board is *affirmed.*

AFFIRMED.

---

4. Appellant also cites this court's opinion in *In re Knowlton*, 481 F.2d 1357, 1367, 178 USPQ 486, 493–94 (1973), for the statement that the disclosure must not only be "full, clear, and exact," but "must also be concise." The court also cautioned: "The amount of precision necessary in any given case is always a matter of degree." *Id.* at 1367, 178 USPQ at 494.